UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
**CENTRAL DIVISION at LEXINGTON**

|  |  |  |
|---|---|---|
| TRAVELERS PROPERTY CAUSUALTY CO. OF AMERICA, et al., | ) ) ) | |
| Plaintiffs, | ) ) | Civil Case No. 5:13-cv-199-JMH |
| v. | ) ) | **MEMORANDUM OPINION AND ORDER** |
| BEGLEY CO., et al., | ) ) | |
| Defendants. | ) | |

\*\*\*

This matter is before the Court upon competing motions for
summary judgment. Plaintiff filed a Motion for Summary Judgment
on Choice of Law and Total Pollution Exclusions [D.E. 81] and
Oral Argument, [D.E. 82]. Defendant Fireman's Fund Insurance
filed a Motion for Summary Judgment on Choice of Law [D.E. 83]
and a response, agreeing with all positions set forth in
Travelers' motion for summary judgment on the absolute pollution
exclusion, which this Court construes as Fireman's Fund's Motion
for Summary Judgment [D.E. 101]. Defendant Century Indemnity
Company filed a Joinder Motion for Summary Judgment on Choice of
Law [D.E. 85]. The insured, Defendant Begley Company, also filed
a Motion for Summary Judgment on Choice of Law [D.E. 84]. All
parties have filed responses and replies to these motions, with
the exception of Century. In addition, Defendant Begley filed a
Motion for Leave to Amend Its Counterclaim Against Travelers and

Crossclaim Against Fireman's Fund. [D.E. 97]. Only Travelers responded. [D.E. 106]. The time for further responses on these motions has passed, and, the Court being otherwise sufficiently advised, the matter is now ripe for the Court's review.

## I. Background

Begley is a Kentucky corporation[1] that owns and operates dry cleaning stores and plants in several states. Its principal office is located in Kentucky [D.E. 84-1 at 4]. Since 1977, Begley has operated a dry cleaning business in Frankfort, Kentucky, on leased premises. [D.E. 81-1 at 3]. From 1991 until 2011, Begley also operated a dry cleaning plant in Michigan City, Indiana, on leased premises. [D.E. 81-1 at 4].

In 1977, Begley purchased liability insurance from Insurance Company of North America, Defendant Century Indemnity Company's predecessor in interest. Century is a Pennsylvania corporation. Its policy covered Begley's Frankfort location, which Begley maintained until 1983. [D.E. 51 at 4].

In 1983, Begley purchased primary general liability insurance from Travelers, a Connecticut corporation, for the periods from 1983 to 1989, and excess liability insurance for the periods from 1985 to 1989. These policies covered the Frankfort site. In 2001, Begley again purchased primary and

---

[1] In 1989 Begley became a wholly owned subsidiary of Rite Aid Corporation and was then acquired by Concord Acquisition Corporation in 1994. [D.E. 84-1 at 4].

excess liability policies from Travelers, this time for both the Michigan City and Frankfort sites, which Begley maintained until 2013. [D.E. 81-1 at 6]. The insurance agents for all Travelers policies were based in Kentucky, and the policies were issued from the Louisville, Kentucky, Travelers office [D.E. 81-2 at 9]. At the time the insurance was purchased in 2001, 70% of Begley's stores were located outside of Kentucky, although Kentucky held more plants and stores than any other single state. [D.E. 84-1 at 4, 5]. These contracts include state-specific notices and endorsements for each state that held an insured property. [D.E. 84-1 at 11; D.E. 102 at 7].

For the periods between 1994 and 2001, Begley purchased a commercial general liability insurance policy with Fireman's Fund, a California corporation, that covered both the Frankfort and Michigan City sites. [D.E. 84-1 at 5]. The policies were purchased through an insurance broker located in Lexington, Kentucky, and Begley received copies of the policies at its Kentucky office. [D.E. 83 at 8-9]. At the time the insurance was purchased, although it had more plants and stores in Kentucky than any other single state, more than 75% of Begley's plants and stores were located outside of Kentucky. [D.E. 84-1 at 4,5]. The policies grouped Begley's locations into different premises based on the state in which they were located and charged different premium rates based on these groups. [D.E. 84-1 at 8].

These contracts also included state-specific notices, amendments, and endorsements. [D.E. 84-1 at 9].

The Travelers and Fireman's Fund policies contained slightly varying versions of a total pollution exclusion, which, as a general matter, precludes coverage for property damage or losses due to requests to test or clean up, or lawsuits resulting from, the discharge of pollutants on the premises. [D.E. 1; D.E. 37 at 7-13]. It is unclear whether Century's policies also contain a pollution exclusion. [D.E. 32 at ¶ 6; D.E. 51 at ¶ 3].

In November 2011, Begley received notification from the owner of the Frankfort site, Frankfort Station, that tetrachloroethylene, a dry cleaning solution, had been found on the property, and the Kentucky Division of Waste Management sought to investigate and remediate. Although Frankfort Station alleged that Begley was the party "truly responsible" for the contamination [D.E. 1-1], it has not yet filed suit against Begley. [D.E. 81-1 at 3]. Then, in April 2013, the current owner of the Michigan City site, Eastgate Plaza Associates, LLC, initiated an action against Begley in LaPorte County Indiana Superior Court seeking damages resulting from "the historical disposal of waste tetrachloroethylene...and other associated dry cleaning waste products by [Begley] during its tenancy." [D.E. 1-4].

Soon thereafter, Begley tendered claims for coverage to Travelers, Fireman's Fund, and Century. [D.E. 97 at 2-3]. Travelers filed its Complaint with this Court on June 24, 2013, seeking a Declaratory Judgment that it had no duty to defend or indemnify Begley. Travelers included Fireman's Fund and Century Indemnity Company as Defendants "so that complete, binding relief can be granted by the Court." [D.E. 1 at 3]. The parties now move for summary judgment on choice of law and the total pollution exclusions.

The insurers assert that Kentucky law applies to interpret Begley's policies under Kentucky's choice of law analysis. Travelers and Fireman's Fund also contend that the total pollution exclusions are unambiguous under Kentucky law and apply to bar coverage on all of Begley's claims. Begley narrows its argument against Travelers and Fireman's Fund to coverage of the Michigan City site, advising all parties that it is not seeking coverage with respect to the Frankfort site by any insurer after 1986. [D.E. 97 at 4]. Focusing solely on the Michigan City site, Begley argues that under Kentucky's choice of law rules, Indiana law governs the interpretation of Fireman's Fund and Travelers policies as they relate to the underlying claims in Indiana state court. Begley also concedes that, under Indiana law, Travelers' polices after 2006 are unambiguous and apply to preclude coverage. Thus, Begley also

moves to amend its counterclaim and crossclaim to reflect these changes.

For the reasons stated herein, the Court holds that Kentucky law applies to interpret Begley's policies with Travelers and Fireman's Fund, in regard to coverage of both the Frankfort and Michigan City sites. The Court is unable to reach a conclusion as to which state's law applies to interpret Century's policy. In addition, the Court holds that the total pollution exclusions in the Travelers and Fireman's Fund policies are unambiguous and apply to preclude coverage for Begley's Frankfort and Michigan City claims.

## II. Summary Judgment

### A. Standard of Review

A motion for summary judgment may only be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962). "The plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on

which that party will bear the burden of proof at trial."
*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

## B. Analysis

### 1. Century's Motion for Summary Judgment

The Court denies Century Indemnity Company's Motion for Summary Judgment because there remains a genuine issue of material fact as to whether Century's policy contains a pollution exclusion. Century asserts that its policy contains a pollution exclusion in its crossclaim against Begley, but the paragraph containing the assertion is generally denied in Begley's answer. [D.E. 32 at ¶ 6; D.E. 51 at ¶ 3]. Century has not made any other contribution to the record before the Court regarding the details of its policy, nor the facts surrounding the transaction. The choice of law analysis is triggered in this case by the presence of total pollution exclusions in each policy and the Court must then consider the facts surrounding the negotiation and performance of the contract for its determination. Having insufficient information to undertake the choice of law analysis, the Court finds that summary judgment in Century's favor is inappropriate.

### 2. Summary Judgment on Choice of Law

Finding no genuine issue of material fact regarding Travelers' and Fireman's Fund's policies, the Court holds that Kentucky law applies to interpret those policies and awards

summary judgment in Travelers' and Fireman's Fund's favor on this issue.

A federal court sitting in diversity must apply the choice of law rules of the forum state, which, in this instance, is Kentucky. *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941); *Performance Contracting Inc. v. DynaSteel Corp.*, 750 F.3d 608, 611 (6th Cir. 2014). Kentucky follows the Second Restatement's "most significant relationship" approach to resolving conflicts of law where an insurance contract is at issue. *Lewis v. Am. Family Ins. Group*, 555 S.W.2d 579, 581-82 (Ky. 1977); *State Farm v. Hodgkiss-Warrick*, 413 S.W.3d 875, 878 (Ky. 2013).

### a. There is an actual conflict between Indiana and Kentucky law.

As an initial matter, the use of either Indiana or Kentucky law in this case would produce different results, thus triggering the choice of law analysis. *See Asher v. Unarco Material Handling, Inc.,* 737 F. Supp. 2d 662, 667-68 (E.D. Ky. 2010) ("the Court only needs to go through the choice of law analysis when a conflict occurs between two states' laws"). Under Indiana law, total pollution exclusions are strictly construed and considered ambiguous if they lack specificity. *See State Auto. Mut. Ins. Co. v. Flexdar, Inc.*, 964 N.E.2d 845, 851 (Ind. 2012) (holding that, where insured's claim was based on

its use of trichloroethylene, and the total pollution exclusion did not explicitly include trichloroethylene in its definition of "pollutant," the exclusion was ambiguous and therefore did not block coverage). The parties agree that, if Indiana law applies, the total pollution exclusions would not bar coverage on Begley's claims because they do not define the specific contaminant that is the cause of pollution in this case.[2] Under Kentucky law, an insurance policy exclusion is enforceable if it is unambiguous both on its face and in application to the facts of the particular claim. *Kemper Nat'l Ins. Cos. v. Heaven Hill Distilleries, Inc.*, 82 S.W.3d 869, 873 (Ky. 2002) ("Where the terms of an insurance policy are clear and unambiguous, the policy will be enforced as written."); *Certain Underwriter's at Lloyd's, London v. Abundance Coal, Inc.*, 352 S.W.3d 594, 598 (Ky. Ct. App. 2011) ("[A]bsolute pollution exclusions, which do not appear ambiguous on their face can be ambiguous in application given certain factual situations.") (citing *Motorists Mut. Ins. Co. v. RSJ, Inc.*, 926 S.W.2d 679, 680-82 (Ky. Ct. App. 1996)). If Kentucky law applies, the total pollution exclusions are unambiguous and apply to bar coverage on Begley's claims.

---

[2] That is, until 2006, when Travelers inserted tetrachloroethylene as a "pollutant" in its total pollution exclusion. Begley concedes that under Indiana law, this change makes the exclusion unambiguous and therefore, the exclusion would apply to preclude coverage. [D.E. 84-1 at 3].

Begley argues, however, that Kentucky law is less clear on the interpretation of total pollution exclusions. This argument is unpersuasive. Kentucky courts have found pollution exclusions almost identical to the exclusion at issue here to be unambiguous on their face. *See e.g.*, *RSJ* 926 S.W.2d at 682; *Abundance Coal*, 352 S.W.3d at 598; *see also Hardy Oil Co. v. Nationwide Agribusiness Ins. Co.*, 5:11-CV-00075, 2013 WL 142428 (E.D. Ky. Jan. 11, 2013). Begley argues that neither *RSJ* nor *Abundance Coal* can serve as strong support for this proposition because *RSJ*'s analysis on the issue is dicta and because *Abundance Coal* never addressed the question. On the contrary, both courts first dispense with the question of whether the policy is ambiguous on its face before moving on to the second question of whether the exclusion is ambiguous as applied. *RSJ* 926 S.W.2d at 682 (finding "nothing inherently ambiguous in the language employed" in the total pollution exclusion); *Abundance Coal*, 352 S.W.3d at 598 ("[A]bsolute pollution exclusions, which do not appear ambiguous on their face can be ambiguous in application given certain factual situations. The case before us is such a case.") (citation omitted). The Court finds the analysis in these appellate court decisions sufficient to indicate that under Kentucky law, the total pollution exclusions at issue here would be construed to be unambiguous on their

face.[3] *See Meridian Mut. Ins. Co. v Kellman*, 197 F.3d 1178, 1181 (6th Cir. 1999) (holding that, where a state's highest court has not ruled on the issue, a federal court interpreting state law may also look to "the decisional law of the state's lower courts.").

Similarly, the instances in which Kentucky courts have found ambiguity in a policy as applied are distinguishable from the exclusions here. In *Abundance Coal,* the plaintiffs sued a coal company for negligent trespass by coal dust that had settled on their property. The appeals court found that the total pollution exclusion was ambiguous as applied to the facts of that case and provided an explanation that this Court finds instructive:

> [S]ubstances which are ordinarily classified as pollutants (*e.g.,* chemicals like Drano and chlorine) may not be pollutants in a given factual situation (*e.g.,* when spilled on the floor causing a slip and fall). Or, in this case, coal dust, debris, and particulate matter may not ordinarily be classified as a pollutant, but such matter may constitute pollution in some cases (such as when the substance that has become airborne is particularly noxious).

*Abundance Coal*, 352 S.W.3d at 599 (interpreting and upholding the court's analysis in *RSJ* 926 S.W.2d at 682). In other words, Kentucky courts have found ambiguity as applied in claims based

---

[3] Begley also cites to *Sunny Ridge Enterprises, Inc. v. Fireman's Fund Ins. Co., Inc.*, 132 F. Supp. 2d 525, 526 (E.D. Ky. 2001), as another source of ambiguity on this issue in Kentucky law. This is unpersuasive because the case relates to whether a total pollution exclusion was ambiguous when coupled with a nuclear exclusion in the policy. No such comparison is presented here.

on "small-scale scenarios" rather than the "classic environmental catastrophes" for which total pollution exclusions were traditionally intended. *Hardy Oil,* 2013 WL 142428 at *2. In the case at bar, tetrachloroethylene is a substance ordinarily classified as a pollutant. Its alleged leakage into the soil and ground water on the premises of Begley's dry cleaning facilities, such that an investigation and remediation by a government agency was ordered, falls well within the type of "classic" pollution commonly covered by the total pollution exclusion. Under Kentucky law and these facts, the total pollution exclusions at issue here would not be considered ambiguous as applied. Therefore, Indiana law would construe the exclusion at bar as ambiguous and inapplicable to bar coverage, whereas Kentucky law would find it unambiguous and enforceable to preclude coverage.

> **b. Under Kentucky's choice of law analysis, Kentucky law applies to interpret Travelers' and Fireman's Fund's policies.**

Having found a true conflict, the Court now turns to the choice of law analysis. In Kentucky, "'[t]he rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in §

6.'" *Saleba v. Schrand*, 300 S.W.3d 177, 181 (Ky. 2009) (citing *Restatement (Second) Conflict of Laws* § 188(1) (1971)); *Lewis,* 555 S.W.2d at 581-82.[4] The Second Restatement's §§ 6 and 188 "provide a broad general framework for the resolution of choice of law issues in the context of a contract dispute" and "[t]hese cases are frequently fact driven,... each case has to be analyzed within its own factual context." *Int'l Ins. Co. v. Stonewall Ins. Co.*, 86 F.3d 601, 606-608 (6th Cir. 1996). Here, the facts concern underlying tort claims at sites in Kentucky and Indiana. Begley has narrowed its focus to the site in Indiana in its pleadings. However, this is a declaratory judgment action originally filed by Travelers to determine its rights and responsibilities under the policy concerning underlying claims at both sites. In addition, both Travelers and Fireman's Fund seek summary judgment on both sites. Therefore, the Court will undertake the choice of law analysis with the underlying claims at both sites in mind.

Of the factors listed in §§ 6 and 188, there are several that favor the application of Kentucky law in this case. Kentucky is the place of contracting and the place of negotiation, as the insurance agents that brokered both the

---

[4] Begley asserts that in this analysis, "transaction" is the claim for coverage, but Kentucky courts' analysis suggests that "transaction" refers to the insurance contract itself. *See, e.g.*, *Hodgkiss-Warrick*, 413 S.W.3d at 879; *Lewis*, 555 S.W.2d at 582.

Travelers and Firemen's Fund policies were located in Kentucky. The Travelers' policies issued from its Kentucky office and Begley received copies of all Fireman's Fund policies at its Kentucky office. Begley is a Kentucky corporation and its principal office has always been located in Kentucky. Kentucky has more of the subject matter of the contract, the insured premises, than any other state, although this factor is less persuasive due to Begley's widespread operations across multiple states.

The remaining factors do not strongly support either Indiana or Kentucky having the most significant relationship to the transaction. For example, both Indiana and Kentucky are the place of performance of the contract, whether that performance is to provide a defense or pay an indemnity, because there is a pending lawsuit in Indiana and a potential lawsuit in Kentucky. *See International Insurance*, 86 F.3d at 605-07 (referring to "performance" as the place where the injured party, a judgment payee, was to be paid by the insurer); *cf. Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 571 (6th Cir. 2001) (referring to place of performance as place where the health insurance company paid benefits to employee).

Next, Kentucky is one of the sites of the underlying tort, the alleged pollution, but Indiana is the location of the second underlying tort. Not only is there no clear winner here, this

14

factor is less significant than others. *See Flint v. Liberty Ins. Corp.*, 613 F. Supp. 2d 899 (E.D. Ky. 2009) ("The location of the tort is not important in the analysis of which state's law determines the validity of or rights under a contract.") (citing *Bonnlander v. Leader Nat'l Ins. Co.*, 949 S.W.2d 618, 620 (Ky. Ct. App. 1996)); *see also Asher*, 737 F. Supp. 2d at 669 (distinguishing *Flint* on its facts, but noting that although "Kentucky has an interest in this action because the underlying tort occurred there,"..."tort victims are not parties to this action, and so Kentucky's interest is not quite as strong...").

Similarly, both Kentucky and Indiana, as the sites of alleged pollution, have an interest in the determination of this issue. Begley argues that Indiana's interest is strongest here as the state of the insured risk, relying heavily on the Second Restatement's § 193. This section teaches that casualty insurance contracts are determined by the law of the state that is the principle location of the insured risk. *Restatement (Second) of Conflict of Laws* § 193 (1971). Begley also identifies jurisdictions that have adopted a "site-specific" approach to choice of law questions on environmental pollution issues. This approach relies on § 193 and presumes that the state in which the pollution occurred has the strongest relationship to the transaction. *See, e.g., CPC Int'l, Inc. v. Northbrook Excess & Surplus Ins. Co.*, 46 F.3d 1211, 1216 (1st

Cir. 1995) (citing *Gilbert Spruance Co. v. Pennsylvania Mfrs.*
*Ass'n Ins. Co.*, 629 A.2d 885, 894 (N.J. 1993)). The Court must
reject Begley's arguments for several reasons.

First, although Kentucky courts have employed § 193 in the
choice of law analysis, those were circumstances in which the
court was asked to consider contracts that insured automobiles,
a single risk that can be located in one state, rather than
risks at a number of fixed locations or premises, making those
cases distinguishable from the case at bar. *See e.g.*, *Flint,* 613
F. Supp. 2d at 900 (construing an automobile insurance policy
where insured represented car would be for use in Indiana, was
titled and registered in Indiana; insured held Indiana driver's
license); *Hodgkiss-Warrick*, 413 S.W.3d at 879 (interpreting
automobile insurance contract that "cover[ed], primarily, the
vehicle [insured] registered, garaged, and used exclusively in
Pennsylvania."); *Lewis*, 555 S.W.2d at 581-82 (regarding an two
automobile insurance policies concerning cars licensed and
garaged in Indiana).

Second, comment (b) to § 193 acknowledges that "where the
policy covers a group of risks that are scattered throughout two
or more states," "the location of the risk has less
significance." *Restatement (Second) of Conflict of Laws* § 193,
comment (b) (1971). Begley argues instead that comment (f)
operates to apply § 193 to this case. However, Begley cites to

16

no authoritative case law in which courts apply comment (f) to similar facts,[5] whereas this jurisdiction has found that, in facts similar to those in this case, § 193 is not a significant factor in the choice of law analysis. *See Asher*, 737 F. Supp. 2d at 673 (addressing the limitations of § 193 under comment (a) and holding that, where the policy covered the insured's repair activities as well as a number of locations across several states, the principle location of the risk could not be determined and, therefore, § 193 was not relevant for the choice of law analysis); *Combs v. Int'l Ins. Co.*, 354 F.3d 568, 587 (6th Cir. 2004) (analyzing Illinois law, the Sixth Circuit observed, "the Second Restatement cautions against focusing on the location of the risk when risks are dispersed across forum boundaries."); *International Insurance*, 86 F.3d at 605 (holding § 193 was not relevant to Ohio's choice of law analysis, where the insured was a corporation that sold its forklifts across the United States, because the "risk" was the risk of tort judgments in each of those states). This is consistent with how jurisdictions that have adopted the "site-specific" approach

_____

[5] The only Sixth Circuit case discussing comment (f) to which Begley has cited is *Meijer, Inc. v. Gen. Star Indem. Co.*, 61 F.3d 903 (6th Cir. 1995)(unpublished opinion) and Begley acknowledges that this case is distinguishable from the facts at bar. Indeed, the Sixth Circuit's focus on comment (f), based on the underlying facts on that case, appears limited to the court's suggestion that in multi-state, multi-risk policies, insurers should explicitly refer to state statutes that limit coverage, or risk having the policy be construed as ambiguous. This is irrelevant to the matters at bar, as there is no state statute that limits coverage here.

have construed § 193. *Gilbert Spruance Co.,* 629 A.2d at 894 ("However, situations in which the insured risk cannot be located...in a single state...the location of the risk has less significance." (citing *Restatement (Second) Conflict of Laws* § 193, comment (b))).

Third, Begley's argument is based solely on the site in Indiana and does not take account of the fact that "insured risk" and alleged pollution are also located in Kentucky. Even if § 193 was a significant factor in this determination, the only state that could serve as the  principle location of risk is Kentucky, which hosts more of Begley's insured locations than any other single state.

In addition, a look at the parties' justified expectations provides insufficient guidance as to which state's law should govern over the other. Begley argues that the insurers could expect their policies to be subject to Indiana law as the law of the state where the claim arose based on four facts: the lack of a choice of law provision in either insurer's policy, the Indiana-specific endorsements and notices in both insurers' policies, Fireman's Fund's varying premium rates based on state groupings, and Travelers' 2006 change to its pollution exclusion to include "tetrachloroethylene" in its definition of pollutant, which suggests that it sought to meet the Indiana legal standard for an unambiguous pollution exclusion. This argument is

compelling and indeed, the Sixth Circuit has held that "the lack of a choice of law provision mean[s] the insured should be governed by the state where the risk was located or the accident occurred." *Asher*, 737 F. Supp. 2d at 671 (interpreting *Nat'l Union Fire Ins. Co. v. Watts*, 963 F.2d 148 (6th Cir. 1992)). But, here, the risks were located and the accidents occurred in Indiana and Kentucky. The policies contained state-specific endorsements and premiums for each of the other states in which insured premises were located, including Kentucky. Therefore, if this logic suggests the insurers expected Indiana law should apply, it must equally suggest that the insurers expected Kentucky law should apply, resulting in a draw. Furthermore, Begley's argument indicates that Begley expected its policies should provide coverage in Indiana but not in Kentucky. But this is not within Begley's justified expectations, as an insured could only reasonably expect complete coverage, and an insurer could not expect an insured would contemplate that its coverage should fluctuate depending on the locale. *See International Insurance*, 86 F.3d at 606-07 (applying the law of the state where the injury occurred, but where the injury occurred in only one state). Therefore, the Court must pick one state's law to govern the contract in this case.

Relatedly, applying Kentucky law to interpret this contract would serve the goals of uniformity and "ease in the

determination and application of the law." *Restatement (Second) of Conflict of Laws* § 6 (1971). Begley essentially asks this Court to construe two insurance contracts but apply Indiana law to the contracts as they relate to the Michigan City site and Kentucky law to those same contracts as they relate to the Frankfort site. Begley notes that other jurisdictions have found that this factor should not be dispositive and, although under different circumstances, have suggested that applying the law of two states in one case is not unduly burdensome. *See In re Sigg Switzerland (USA), Inc. Aluminum Bottles Mktg. & Sales Practices Litig.*, 10-MD-2137, 2011 WL 64289 (W.D. Ky. Jan. 7, 2011) (finding that, where the case was consolidated "for the organizational benefit" and the court "did not seek to change any of the substantive claims of the parties or the applicable law," each state's choice of law analysis would apply depending on where the actions were originally filed); *Reichhold Chemicals, Inc. v. Hartford Acc. & Indem. Co.*, 703 A.2d 1132, 1142 (1997) (finding that, where the issue "is not an area of the law in which a trial court might find itself grappling with numerous conflicting and subtly differing bodies of law", the administrative ease prong should not be dispositive). Here, however, the difference between the two applicable states' laws is not subtle. The parties' rights are wholly different under these contracts depending on whether Kentucky or Indiana law

applies. There are also additional factors that favor the application of Kentucky law, so this factor alone is not dispositive.

Given the above analysis, the Court holds that Kentucky has the most significant relationship with the transaction at issue, and therefore, its law will apply to the total pollution exclusions in Begley's policies with Travelers and Fireman's Fund.

### 3. Summary Judgment on the Total Pollution Exclusions

Travelers and Fireman's Fund argue they are entitled to a determination as a matter of law that the total pollution exclusions in their policies preclude coverage for Begley's claims related to both the Frankfort and Michigan City sites. Defendant Century Indemnity Company does not join this motion. Begley asks the Court to deny the motion for summary judgment as it relates to the Frankfort site because it has withdrawn is claim for coverage of that site. In the alternative, Begley asks the Court to defer ruling and give Begley time, after receiving the Court's choice of law ruling, to fully brief the argument.

The Court agrees that, under Kentucky law, the total pollution exclusions in Travelers and Fireman's Fund's policies bar Begley from recovering on its claims. As explained above, in Kentucky, an insurance policy exclusion is enforceable if it is unambiguous both on its face and in application to the facts of

the particular claim. *Kemper*, 82 S.W.3d at 873; *Abundance Coal,* 352 S.W.3d at 598; *RSJ,* 926 S.W.2d at 680-82.

First, the exclusions here are unambiguous on their face. The Court looks to Travelers' 2001 policy [D.E. 1-17] as a representative sample, acknowledging that there are a number of policies and exclusions, but that those are only slightly varied from the sample below. The relevant portion of the exclusion provides that:

> This insurance does not apply to:
>
> . . .
>
> f. Pollution
>
> (1) "Bodily injury" or "property damage" arising out of the actual, alleged or threatened discharge, dispersal, seepage, migration, release or escape of pollutants:
>
> (a) At or from any premises, site or location which is or was at any time owned or occupied by, or rented or loaned to, any insured
>
> . . .
>
> (2) Any loss, cost or expense arising out of any:
>
> (a) Request, demand, order or that any insured or others test for, monitor, clean up, remove, contain, treat, detoxify or neutralize, or in any way respond to, or assess the effects of pollutants; . . .
>
> Pollutants means any solid, liquid, gaseous or thermal irritant or contaminant, including smoke, vapor, soot, fumes, acids, alkalis, chemicals and waste. Waste includes materials to be recycled, reconditioned or reclaimed."

Begley seeks coverage for claims that arise from contamination by tetrachloroethylene at two of its dry cleaning operations. The policy clearly excludes coverage for damage from, and requests to clean up, "pollutants." Tetrachloroethylene is reasonably classified as a "chemical" and therefore, a pollutant. This exclusion is unambiguous on its face.

Second, the exclusions at issue are unambiguous as applied to the facts in this case. Tetrachloroethylene is the type of substance commonly classified as a pollutant and its leakage into the environment, drawing the involvement of a government agency seeking investigation and remediation, is the type of situation commonly covered by the total pollution exclusion. *See Abundance Coal*, 352 S.W.3d at 599; *RSJ* 926 S.W.2d at 682; *Hardy Oil,* 2013 WL 142428 at *2.

The Court denies Begley's request to limit its ruling to the Michigan City site because both Travelers and Fireman's Fund have filed motions for summary judgment related to both sites. The Court also denies Begley's request to defer ruling. Begley has filed multiple responses to each party's pleadings and has had, in these filings, ample opportunity to argue in the alternative and respond to the insurers' arguments.

Given the above analysis, the Court holds that under Kentucky law, the total pollution exclusions in Travelers' and

Fireman's Fund's policies are unambiguous and enforceable. Therefore, the Court grants summary judgment in favor of Travelers and Fireman's Fund on this issue.

### III. Motion for Leave to Amend

Defendant Begley has also moved for leave to amend its counterclaim against Plaintiff Travelers and its crossclaim against Defendant Fireman's Fund. Only Plaintiff responded, raising no objection in its response. The Court grants Begley's motion.

Under Federal Rule of Civil Procedure 15(a), "a party may amend its pleading once as a matter of course within 21 days after serving it." Fed. R. Civ. P. 15(a)(1). "In all other cases, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." *Id*. 15(a)(2). Leave to amend should freely be given as long as the amended pleading does not involve (1) undue delay; (2) bad faith; (3) repeated failure to cure deficiencies in previous amendments; (4) undue prejudice to the opposing party; or (5) futility of amendment. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

This is Begley's first request to amend, it seeks only to narrow its existing claims against its insurers, and does not ask to add additional elements or claims. Therefore, the Court

finds that none of the factors that would foreclose permission to amend are present and grants Begley's request.

## IV. Conclusion

Accordingly, for the foregoing reasons, **IT IS ORDERED**:

(1) that Plaintiff's Partial Motion for Summary Judgment on Choice of Law and Total Pollution Exclusion [D.E. 81] be, and the same hereby is, **GRANTED**;

(2) that Plaintiff's Motion for Oral Argument on Its Motion for Partial Summary Judgment [D.E. 82] be, and the same hereby is, **DENIED AS MOOT**;

(3) that Defendant Fireman's Fund Motion for Summary Judgment on Choice of Law [D.E. 83] and Summary Judgment [D.E. 101] be, and the same hereby is, **GRANTED**;

(4) that Defendant Begley's Motion for Partial Summary Judgment on Choice of Law [D.E. 84] be, and the same hereby is, **DENIED**;

(5) that Defendant Century Indemnity Company's Motion for Summary Judgment on Choice of Law [D.E. 85] be, and the same hereby is, **DENIED**;

(6) that Defendant Begley Company's Motion for Leave to Amend Its Counterclaim Against Plaintiff Travelers and Crossclaim against Defendant Fireman's Fund [D.E. 97] be, and the same hereby is, **GRANTED**.

This the 18th day of September, 2014.



Signed By:

*Joseph M. Hood*

Senior U.S. District Judge